**SUBURBAN CONSTRUCTION CO., INC.**

v.

**HARTFORD FIRE INSURANCE COMPANY; Sentry Insurance.**

**Civ. No. 90–379–D.**

United States District Court, D. New Hampshire.

July 28, 1992.

**54**

Christine M. Rockefeller, Dover, NH, for plaintiff.

Michael F. Aylward, Boston, MA, Anne G. Scheer, Concord, NH, Elizabeth M. Rice, Boston, MA, for defendants.

### ORDER

DEVINE, Chief Judge.

In this civil action, plaintiff Suburban Construction Co., Inc. ("Suburban"), seeks a declaratory judgment that it is covered by various insurance policies issued by defendants Hartford Fire Insurance Company ("Hartford") and Sentry Insurance, A Mutual Company ("Sentry"), in connection with claims against Suburban for the contamination of property resulting from a gasoline leak from an underground fuel storage tank.[1] Suburban installed the storage tank at a service station in Greenland, New Hampshire, in 1984.

Jurisdiction is based on 28 U.S.C. § 1332.

Presently before the court are summary judgment motions pursuant to Rule 56(c) filed by plaintiff Suburban and by each of the defendants, Hartford and Sentry.

### 1. Background

In the underlying first-party case, Hussey filed suit against Exxon, alleging, inter alia, negligent installation, maintenance, and upkeep of the fuel storage equipment on Hussey's property. Hussey alleges that this equipment, which is owned by Exxon and was installed at Exxon's direction, was installed in a negligent fashion, and, as a result, fuel leaked from the underground storage tank into the Hussey property.

Subsequent to the filing of the first-party complaint, Exxon filed a third-party complaint against Suburban alleging negligent workmanship and breach of contract. Exxon had hired Suburban to install the tanks at the Hussey projects in 1984. The third-party complaint further alleges that Suburban had agreed to indemnify Exxon for all claims resulting from the negligence of Suburban. In its claim, Exxon seeks indemnification from Suburban and judgment against Suburban for all sums that may be adjudged against Exxon in the Hussey claim. Additionally, Exxon is seeking a judgment against Suburban in the amount of $1,500,000 for all expenses incurred or which will be incurred for removal of gasoline from the soil and ground water at the Hussey property.

Suburban has been insured at various times since 1982 by policies issued by Hartford and Sentry. Both insurance companies have refused to provide defense or coverage for these claims.

---

1. The underlying suit pending in this court is *Anne B. Hussey, Individually and in her Capacity as an Officer and Director of H & H Oil Company, Inc.; H & H Oil Company, Inc. v. Exxon Corporation; Exxon Company, U.S.A. v. Suburban Construction Company, Inc., et al.,* Civil No. 88–385–D ("*Hussey*").

## 2. Discussion

Rule 56(c), Fed.R.Civ.P., provides that summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The "mere existence" of some dispute over factual issues is not sufficient; the disputed facts must be "material". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 248, 106 S.Ct. at 2510.

In reviewing an order granting summary judgment, the court views the record in the light most favorable to the opposing party and construes all inferences in that party's favor so long as they have a reasonable basis in the record. *Villanueva v. Wellesley College*, 930 F.2d 124, 127 (1st Cir.), *cert. denied*, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). The opposing party may not rely on unsupported allegations or conjecture. *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). Rather, Rule 56 requires the nonmoving party to set forth "specific facts."

The fact that all three parties "have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or another." *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987)). Instead, the court must consider each party's motion separately and determine whether that party is entitled to judgment as a matter of law. *Williams v. Frank*, 702 F.Supp. 14, 16 (D.Mass.1988).

### a. Hartford's Motion for Summary Judgment

Hartford issued a primary liability insurance policy to Suburban covering the period from September 15, 1982, to September 15, 1985. In addition, Hartford issued an umbrella policy covering the period from September 15, 1983, to September 15, 1984.

The terms of the Hartford general liability policy state in pertinent part that Hartford

> will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of ... *bodily injury* ... or ... *property damage* ... to which this insurance applies, caused by an *occurrence*....

Hartford Fire Insurance Co., Inc., Policy No. 08–CBP 150941 (attached to Hartford's Motion for Summary Judgment at Exhibit 1) (emphasis in original).

The Hartford umbrella policy contains similar language stating that

> [t]he company will pay on behalf of the *Insured ultimate net loss* in excess of the total applicable limit ... of *underlying insurance* ... because of *bodily injury, personal injury, property damage or advertising injury* to which this insurance applies, caused by an *occurrence*.

Hartford Fire Insurance Co., Inc., Policy No. 08 RHU GW 9941 (attached to Hartford's Motion for Summary Judgment at Exhibit 1) (emphasis in original).

"Occurrence" is separately defined in both Hartford policies as

> an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*....

Hartford General Liability Policy, Definitions; Hartford Umbrella Policy, Definitions § V (emphasis in original).

"Property damage" is separately defined in both policies as

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom or (2) loss of use of tangible property which has not been physically injured or de-

stroyed provided such loss of use is caused by an *occurrence* during the policy period. *Id.* (emphasis in original).

Therefore, Hartford's duty to indemnify arises when *"property damage" "occurs"* during the policy period.

■■■ Under both Massachusetts and New Hampshire law,[2] the time of an "occurrence", within the meaning of an indemnity policy, is "not the time the wrongful act was committed, but the time when the complaining party was actually damaged." *Continental Cas. Co. v. Gilbane Bldg. Co.*, 391 Mass. 143, 461 N.E.2d 209, 215 (1984) (citing *Bartholomew v. Insurance Co. of No. America*, 502 F.Supp. 246, 252 (D.R.I.1980), *aff'd sub nom., Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27 (1st Cir.1981)); *see also Peerless Ins. Co. v. Clough*, 105 N.H. 76, 193 A.2d 444 (1963) (the time of the occurrence resulting in the loss or damage, and not the time of the negligence, determines when there is coverage under the policy). The question then becomes, "[w]hen does damage actually occur, as a matter of law, in a situation where damage was actually occurring, as a matter of fact, for a period of [ ] years." *Bartholomew, supra*, 502 F.Supp. at 252.

■ A "manifestation" or "discovery" trigger was adopted by a federal district court in *Allstate Ins. Co. v. Quinn Constr. Co.*, 713 F.Supp. 35 (D.Mass.1989). There, a dispute arose between the insurers of a gasoline station concerning when an underground tank leaked, contaminating the property of an adjoining public utility. The district court concluded that the time of "occurrence" was when the gasoline contamination first became known to the claimant. *Id.* at 39 (citing *Eagle–Picher Indus., Inc. v. Liberty Mutual,*

682 F.2d 12, 24–25 (1st Cir.1982), *cert. denied*, 460 U.S. 1028, 103 S.Ct. 1279, 1280, 75 L.Ed.2d 500 (1983)); *Bartholomew, supra*, 502 F.Supp. at 252–54; *American Home Assur. Co. v. Libbey–Owens–Ford Co.*, 786 F.2d 22, 30 (1st Cir.1986). Also citing *Eagle–Picher, supra*, Judge Loughlin of this court in *Hanover Ins. v. Tinkham*, slip op., No. 86–539–L (D.N.H.1988), adopted the manifestation of injury theory, ruling that the question of fact to be determined at trial was the date the injury to the water supply in question became *evident* or *manifest. Id.* at 9.

In the instant case, Hartford contends that there is no evidence that an "occurrence" resulting in "property damage" took place during Hartford's period of coverage (i.e., September 15, 1982, through September 15, 1985); therefore, Hartford argues, it cannot be, as a matter of law, required to indemnify Suburban.

In support of its motion, Hartford relies on the deposition testimony of Dennis Phillips, president of Suburban, in which Mr. Phillips admits that he has no knowledge of how and when the gasoline leak commenced at the service station in question. Phillips Deposition at 9–10. Additionally, Mr. Phillips admits that he has no evidence that any property damage occurred prior to the discovery of the leak in April 1987. *Id.* at 44.

Hartford further relies on testimony from Robert Hussey, general manager of the service station in question. Mr. Hussey testified that he had examined the gasoline inventory records for 1984, 1985, and 1986 and found that there was no product loss during those years. Hussey Deposition at 27–32. Mr. Hussey further testified that he "did not find any product leaking out of the 4,000–gallon tank until we were shut down with

---

2. Using New Hampshire's choice-of-law rules, the New Hampshire Supreme Court has ruled that contract disputes are to be resolved in accordance with the law of the state with "the most significant relationship" to the contract. *New England Merchants Nat'l Bank v. Lost Valley Corp.*, 119 N.H. 254, 256, 400 A.2d 1178, 1180 (1979) (citations omitted). For insurance policies, the state with the most significant relationship is the one that is the "principal location of the insured risk." *Ellis v. Royal Ins. Co.*, 129 N.H. 326, 331, 530 A.2d 303, 307 (1987) (citation omitted).

Defendants claim that the insured risk was in Massachusetts, while plaintiff claims that the insured risk was in New Hampshire. None of the parties, however, present the court with a clear argument as to why the "insured risk" is in one state or the other. Since there appears to be no material difference between the two, the court does not rule on the choice-of-law issue at this time. *See Fashion House v. K–Mart Corp.*, 892 F.2d 1076, 1092 (1st Cir.1989) ("when a choice-of-law question has been reduced to the point where nothing turns on a more precise refinement, that should be the end of the matter").

water rushing into the tank." *Id.* at 30. He indicated that this incident occurred in the spring of 1987. *Id.* at 32.

Suburban relies on its own motion for summary judgment as its objection to Hartford's motion for summary judgment. In support of its motion, Suburban relies on "expert" testimony indicating that "there was a leak in the tank system beginning in May 1984 which increased in volume until it appeared to stop in October 1985, recommenced in September 1986 and increased in volume through November 1986." Report of Warren Rogers at 4 (attached to Suburban's Motion for Summary Judgment as Exhibit F).[3] Additionally, Suburban relies on an assertion in the underlying Hussey complaint against Exxon that "beginning in 1984, the defendant Exxon Corporation's tank began to leak." When the tank actually began to leak, however, is inapposite to the question at hand. As discussed above, the crucial time is when the leak manifested itself.

■ Here, however, Suburban provides no evidence indicating that the gasoline leak and property damage became manifest during the period in which the Hartford policies were in effect, i.e., September 1982 to September 1985. In the absence of such evidence to contradict or question Hartford's evidence that the leak and property damage became manifest in 1987, the court finds that Hartford is entitled to summary judgment as a matter of law.

### b. Sentry's Motion for Summary Judgment

Sentry issued a comprehensive liability insurance policy No. 88–76723–02, to Suburban, with effective dates of September 1985 through January 1, 1991. In addition, Sentry issued Umbrella Policy No. 88–76723–03, with effective dates of January 1, 1986, through January 1, 1991.

Sentry argues in its motion for summary judgment that the "property damage" which "occurred" at the gas station in question that

would trigger an insurance claim was in April 1987. Memorandum in Support of Sentry's Motion for Summary Judgment at 8. Sentry further argues that the policies in effect in April 1987 contain a special pollution exclusion that eliminates any duty to defend or indemnify Suburban for such claims. *Id.*

■ In support of its motion, Sentry attached purported copies of the 1987 Comprehensive Liability Policy No. 88–76723–02 and the 1987 Umbrella Policy No. 88–76723–03 as Exhibits K and L, respectively. Unfortunately, these documents are unaccompanied by affidavits attesting to their validity as required by Rule 56(e), Fed.R.Civ.P. *See Nolla Morell v. Riefkohl,* 651 F.Supp. 134, 140 (D.P.R.1986) (if written documents are relied upon, they must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)).

While "[d]ocuments presented in support of a motion for summary judgment may be considered even though they do not comply with the requirements of Rule 56 if there is no objection to their use," *Equia v. Tompkins,* 756 F.2d 1130, 1136 (5th Cir.1985), this court declines to rely on these documents because they are not signed by Suburban. Specifically, the all-important Pollution Exclusion Endorsement (which Sentry argues relieves them from any duty to indemnify Suburban) is devoid of any reference to Suburban except for the policy number, even though the endorsement has a section asking for the signature of a company official, the name of the company, and the date.

■ As a result, issues still remain concerning whether or not Sentry is required to defend or indemnify Suburban under the 1987 policies. Therefore, Sentry's motion for summary judgment must be denied.

### c. Suburban's Motion for Summary Judgment

Suburban has moved for summary judgment against both defendants Hartford and

---

**3.** Hartford has separately moved to strike Warren Rogers' Report from the record (document no. 25), claiming, for a variety of reasons, that the report is not admissible evidence under Rule 56(e), Fed.R.Civ.P. The court's ruling on Hart-

ford's summary judgment motion contained herein renders the motion to strike moot. Similarly, Suburban's motion to amend its summary judgment motion to add the affidavit of Warren Rogers (document no. 31) is also rendered moot.

58

Sentry. As noted above, Hartford is entitled to summary judgment as a matter of law. With respect to Sentry, Suburban argues that Sentry is required to defend or indemnify it under the terms of the 1986 Sentry policies. Suburban's Motion for Summary Judgment at 11–14. Such a ruling, however, runs contrary to this court's finding *supra* at 56–57 that the property damage occurred in April 1987, when the damage to the property became "manifest". As a result, Suburban's motion for summary judgment with respect to the 1986 Sentry policies is denied.

## 3. Conclusion

For the reasons stated herein, the court grants Hartford's motion for summary judgment (document no. 21), holding that Hartford has no duty to defend or indemnify Suburban. Furthermore, the court denies both Sentry's motion for summary judgment (document no. 22) and Suburban's motion for summary judgment (document no. 23). In addition, Hartford's motion to strike (document no. 25) and Suburban's motion to amend its summary judgment motion (document no. 31) are denied as moot.

SO ORDERED.